1
2
3
4
5
6
7
8                        UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JERRY GILLIAM,                            No.  2:14-cv-02454 MCE AC

12                  Plaintiff,

13        v.                                   FINDINGS & RECOMMENDATIONS

14   MA ELIZA CANGGAS GILLIAM, et al.,

15                  Defendants.

16

17        This matter is before the undersigned in accordance with Local Rule 302(c)(21).  On

18   February 27, 2015, the court ordered plaintiff to show cause why his complaint should not be

19   dismissed for failure to state a claim.  ECF No. 27.  The court also permitted defendants to file an

20   optional opposition to plaintiff's response within 14 days.  Id.  On March 10, 2015, plaintiff filed

21   a response to the order to show cause, along with a motion for leave to amend his complaint.

22   ECF Nos. 30, 31.  On March 11, 2015, defendant J. Christina Alvarez Aulakh, erroneously sued

23   as J. Christina Alverez Aulaki, filed oppositions to plaintiff's response and motion for leave to

24   amend.  ECF Nos. 33, 34.

25        On March 20, 2015, plaintiff filed a reply to defendant Aulakh's opposition.  ECF No. 36.

26   These Findings and Recommendations will not address plaintiff's reply because the court's

27   ////

28   ////

                                          1

1   February 27, 2015 order did not authorize a reply to defendants' opposition.[1]  ECF No. 27.  On

2   March 31, 2015, plaintiff filed a self-styled "Statement of Showing of Good Cause" in support of

3   his motion for leave to amend.  ECF No. 40.  These Findings and Recommendations will not

4   address this statement, because it is unauthorized by the Local Rules and the Federal Rules of

5   Civil Procedure.[2]

6           For the reasons that follow, the court will recommend that the complaint be dismissed.

7                                    FACTUAL BACKGROUND

8           The complaint alleges as follows.  Plaintiff and defendant Ma Eliza Canggas Gilliam

9   ("Canggas") were married on December 23, 2006, and had a child.  ECF No. 1-2 at 4.  By 2008

10  the couple had separated and plaintiff was paying Canggas child support.  Id.  At some point

11  during 2008 Canggas moved to the Philippines with the couple's daughter, Lou Eva.  Id.  The

12  couple then divorced on January 27, 2010, in Sacramento County.  Id.  During the divorce

13  proceedings the Sacramento Superior Court held that issues related to custody and visitation of

14  Lou Eva would be determined by a court in the Philippines, the child's home country.  Id. at 5.

15  When plaintiff scheduled the matter of child custody to be heard in a Philippine court in March

16  and April of 2009, Canggas moved in order to divest the court of personal jurisdiction over her.

17  Id.  On another occasion, plaintiff secured a bench warrant for Canggas's arrest for failure to

18  appear at her child custody hearing in the Philippines.  Id. at 5–6.  When Canggas was brought

19  before the court, she agreed to work out some sort of custody and visitation agreement with

20  plaintiff.  Id.  With the court's permission, she promised to return for a hearing in two weeks,

21  presumably to finalize a custody arrangement.  Id. at 6.  However, Canggas never appeared.  Id.

22          Plaintiff now brings this lawsuit against Canggas, claiming that her persistent refusal to

23  adjudicate their child custody issues constitutes extreme and outrageous conduct that has caused

24  him severe emotional distress.  Id. at 1.  Plaintiff also alleges that the remaining defendants are

25  liable for assisting Canggas with her plan to prevent him from finding the whereabouts of his

26  _____

[1]  The court finds after reviewing plaintiff's reply that it would not affect the disposition of this
27  matter even if it were considered.

[2]  The court finds after reviewing plaintiff's statement that it would not affect the disposition of
28  plaintiff's motion for leave to amend even if it were considered.

1    daughter.  Id. at 4.  Plaintiff alleges that defendants Debbie Sue Magistrado, Marsha A. McHugh,

2    and James Robert Gilliam all know where defendant Canggas resides but have refused to tell him.

3    Id. at 6, 10.  In addition, plaintiff alleges that they have regularly supplied Canggas with funds to

4    enable her to continue evading plaintiff.  Id. at 6, 11.  Plaintiff also alleges that defendant Aulakh

5    assisted defendant Canggas by neglecting to inform her that hiding Lou Eva from him was a

6    federal crime.  Id.  Defendant Aulakh also allegedly supported defendant Canggas by refusing to

7    answer plaintiff's numerous email requests for her location.  Id. at 9.  Throughout this entire

8    period, no custody or visitation order has ever been issued by any court.  Id. at 10, 13.  Plaintiff

9    seeks damages for extreme emotional distress and a declaratory judgment that the defendants

10   have acted with outrageous conduct.  Id. at 14.

11          The complaint invokes this court's diversity jurisdiction under 28 U.S.C. § 1332, on

12   grounds that plaintiff resides in Missouri and the defendants (other than Canggas, who remains

13   unserved because her precise location in the Philippines is unknown to plaintiff [3]) in California.

14   Id. at 3.

15                              JURISDICTION AND ABSTENTION

16   I.      Standards Governing the Domestic Relations Exception to Diversity Jurisdiction and

17           Related Abstention Doctrines

18          The complaint states no cause of action under any federal statute.  Rather, jurisdiction is

19   alleged exclusively on the basis of diversity of citizenship.  District courts have original

20   jurisdiction over civil actions between citizens of different states where the matter in controversy

21   exceeds $75,000.  See 28 U.S.C. § 1332(a).  Diversity jurisdiction requires complete diversity,

22   which means that all plaintiffs must be of different citizenship than all defendants.  See

23   Caterpillar Inc. v. Lewis, 519 U.S. 61, 68 (1996).

24          The United States Supreme Court has instructed federal courts not to adjudicate diversity

25   [3]  On February 2, 2015, plaintiff filed a motion for a 120 day extension to serve defendant

26   Canggas.  ECF No. 18.  On February 9, 2015, plaintiff filed an amended motion for service by
     publication, ECF No. 19, a motion to serve defendant Canggas by registered mail, ECF No. 20,

27   and a motion for early discovery, ECF No. 21.  The court declined to rule on these motions on
     February 27, 2015, until the order to show cause was addressed.  ECF No. 27.  These motions

28   will be referred to below as the February 2015 Service and Discovery Motions.

cases that require the court "to issue divorce, alimony, or child custody decrees." <u>Ankenbrandt v. Richards</u>, 504 U.S. 689, 703 (1992). This "domestic relations exception" to diversity jurisdiction is based on a well-established interpretation of the diversity statute, as the Supreme Court re-affirmed in <u>Ankenbrandt</u>. <u>See</u> <u>Atwood v. Fort Peck Tribal Ct. Assiniboine</u>, 513 F.3d 943, 947 (9th Cir. 2008). There the Court explained that actions involving divorce, alimony, or child custody decrees are not "civil actions" within the meaning of Section 1332. <u>Ankenbrandt</u>, 504 U.S. at 698, 700. Accordingly, the federal courts lack jurisdiction over such matters. <u>Id.</u> The domestic relations exception does not, however, deprive the federal courts of jurisdiction over actions for damages. <u>Id.</u> at 701-04; <u>see also</u> <u>McIntyre . McIntyre</u>, 771 F.2d 1316 (9th Cir. 1985) (district court had diversity jurisdiction over tort action between former spouses involving alleged interference with noncustodial father's visitation rights).[4]

Abstention may nonetheless be appropriate in such cases, where disputed domestic relations are central to the claims. <u>Ankenbrandt</u>, 504 U.S. at 706 (citing <u>Burford v. Sun Oil Co.</u>, 319 U.S. 315 (1943). It is well established that federal courts should not decide "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." <u>Colorado River Water Conservation Dist. v. United States</u>, 424 U.S. 800, 814 (1976). This standard may be satisfied where "a federal suit [is] filed prior to effectuation of a divorce, alimony, or child custody decree, and the suit depend[s] on a determination of the status of the parties." <u>Ankenbrandt</u>, 504 U.S. at 706.

The strong state interest in domestic relations, the superior competence of state courts in settling family disputes because regulation and supervision of domestic relations within their

---

[4] Prior to <u>Ankenbrandt</u>, in a line of cases inconsistent with <u>McIntyre</u>, the Ninth Circuit had applied the domestic relations exception to preclude jurisdiction in diversity cases which did not seek domestic relations decrees, but in which the primary issue concerned child custody or the status of a parent or child, or husband and wife. <u>See</u> <u>Csibi v. Fustos</u>, 670 F.2d 134, 136-37 (9th Cir. 1982) (affirming dismissal of diversity action involving two women who each asserted surviving spouse rights to estate of decedent). Insofar as <u>Csibi</u> held that district courts lack diversity jurisdiction over claims for damages related to domestic relations, it is overruled by <u>Ankenbrandt</u>'s contrary holding. However, <u>Csibi</u> remains instructive regarding the circumstances in which the district courts should abstain from deciding family law questions. <u>See id.</u> (discussing comity concerns and need for deference to state courts regarding domestic relations).

1    borders is entrusted to the states, and the possibility of incompatible federal and state court

2    decrees in cases of continuing judicial supervision by the state, make federal abstention

3    appropriate where child custody matters are at issue.  Moore v. Sims, 442 U.S. 415 (1979)

4    (district court should have abstained from case implicating ongoing child welfare proceedings).

5    Abstention is appropriate "when the core issue involves the status of parent and child or husband

6    and wife."  Coats v. Woods, 819 F.2d 236, 237 (9th Cir.) (affirming abstention and dismissal of

7    action challenging ex-spouse's interference with child custody), cert. denied, 484 U.S. 802

8    (1987); see also Peterson v. Babbitt, 708 F.2d 465 (9th Cir. 1983) (per curiam) (affirming

9    abstention and dismissal of suit alleging interference with child visitation).  The Ninth Circuit's

10    strong policy in favor of abstention in this context is consistent with the principle that "the whole

11    subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the

12    states, and not to the laws of the United States."  Ohio ex rel. Popovici v. Agler, 280 U.S. 379,

13    383 (1930).

14        II.    Discussion

15        Although plaintiff does not seek a child custody or visitation decree from this court, and

16    so diversity jurisdiction is not precluded under Ankenbrandt, his claims for intentional infliction

17    of emotional distress are factually predicated on alleged interference with his parental rights.[5]

18    Those rights are subject to the jurisdiction of the California and Philippine courts, and have not

19    yet been adjudicated although proceedings were initiated in the Philippines as directed by the

20    California court.  Abstention is therefore appropriate.

21        The claims here are similar to those in Coats v. Woods, supra, in which plaintiff alleged

22    that her ex-husband and others had wrongfully deprived her of child custody.  The Ninth Circuit

23    affirmed the district court's decision to abstain, noting that child custody and visitation rights are

24    matters that should be left to the state courts:

25    ──────────────
      [5]  To recover on a claim of intentional infliction of emotional distress, a plaintiff must prove

26    "extreme and outrageous conduct by the defendant with the intention of causing, or reckless
      disregard of the probability of causing, emotional distress."  Cochran v. Cochran, 65 Cal. App.

27    4th 448, 494 (1998).  Absent a legally-enforceable right to custody of or visitation with his
      daughter, plaintiff cannot plausibly maintain that the failure to reveal her whereabouts constituted

28    "extreme and outrageous conduct" within the meaning of the statute.

We hold that the district court's decision to abstain was not an abuse of discretion. The district court, in dismissing the action, relied on the abstention doctrine under which federal courts traditionally decline to exercise jurisdiction in domestic relations cases when the core issue involves the status of parent and child or husband and wife. The district court's application of the abstention doctrine was appropriate under Peterson [v. Babbitt], 708 F.2d […] 465 [(9th Cir. 1983) (per curiam)]. In that case, a prisoner brought a section 1983 action alleging that various defendants wrongfully deprived him of visitation rights with his children. We affirmed the district court's dismissal of the case on the ground that plaintiff had pending state actions in which he could bring his constitutional claims and that the case itself raised issues of traditional state concern. We stated that

"the strong state interest in domestic relations matters, the superior competence of state courts in settling family disputes because regulation and supervision of domestic relations within their borders is entrusted to the states, and the possibility of incompatible federal and state court decrees in cases of continuing judicial supervision by the state makes federal abstention in these cases appropriate."

Peterson, 708 F.2d at 466.

Coats, 819 F.3d at 237.

Here as in Coats, the complaint asserts tort claims[6] against an ex-spouse and others involved in allegedly keeping a child from the plaintiff parent. Here as in Coats, although the complaint does not seek direct adjudication of parental rights or custody arrangements by the federal court, the case nonetheless "is at its core a child custody dispute." Coats, 819 F.2d at 237. Here as in Coats, adjudication of the claims requires determination of the rights of a parent vis-à-vis a minor child and ex-spouse. Accordingly, here as in Coats, abstention is appropriate. Plaintiff filed suit prior to the effectuation of a child custody decree, and his claims turn on the parental rights and custodial status of the parties. Accordingly, this court need not exercise its jurisdiction to consider the matter. See Ankenbrandt, 504 U.S. at 706. Pursuant to Coats and Peterson, it should not do so.

Because the core of this case is a child custody dispute, the undersigned will recommend that the court abstain from exercising jurisdiction.

////

---

[6] Coats alleged constitutional torts and the instant case alleges state law torts.

FAILURE TO STATE A CLAIM

Even if the court were to exercise its discretion to consider plaintiff's claims, the complaint would be subject to dismissal for the reasons now explained.

I.      Standards Under Rule 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint should only be dismissed sua sponte for failure to state a claim if it appears beyond a doubt that the plaintiff can prove no set of facts entitling him to relief.  Hishon v. Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45–46 (1957)); Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981).  Dismissal may be based either on the lack of cognizable legal theories or the lack of pleading sufficient facts to support cognizable legal theories.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint.  Hosp. Bldg. Co. v. Rex. Hosp. Trs., 425 U.S. 738, 740 (1976).  The court construes the pleading in the light most favorable to plaintiff and resolves all doubts in plaintiff's favor.  Parks School of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995).  In a case where plaintiff is proceeding pro se, the court has an obligation to construe the pleadings liberally.  Bretz v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc).  However, the court's liberal interpretation of a pro se complaint may not supply essential elements of a claim that are not plead.  Pena v. Gardner, 976 F.2d 469, 471 (9th Cir. 1992); Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982).  Furthermore, "[t]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." Clegg v. Cult Awareness Network, 18 F.3d 752, 754–55 (9th Cir. 1994).  Neither need the court accept unreasonable inferences, or unwarranted deductions of fact.  Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

II.      Plaintiff's Response to Order To Show Cause

Plaintiff was ordered to show cause why his complaint should not be dismissed for failure to state a claim in light of (1) the full faith and credit statute, 28 U.S.C. § 1738, which gives preclusive effect to the order of the Sacramento County Superior Court that the custody of

7

1   plaintiff's daughter be decided by a court of competent jurisdiction in the Philippines; and (2) the

2   essential elements of the torts of negligent and intentional infliction of emotional distress.  ECF

3   No. 27.

4   Regarding the full faith and credit issue, plaintiff argues that because the state court

5   judgment involved only himself and defendant Canggas, it cannot preclude his claims against the

6   other defendants.  ECF No. 30-1.  Plaintiff expresses his intention to drop Canggas from the

7   lawsuit.[7]

8   Regarding the sufficiency of his allegations to state a claim, plaintiff argues that "the

9   conduct of defendants in hiding plaintiff's daughter from him and aiding and assisting this

10  activity exceeds all bounds of decency tolerate in a civilized community."  ECF No. 30 at 4.

11  Moreover, "People in our communities do not just take relatives' children and hide them for the

12  first seven (7) years of their life.  This is not tolerated in our society and inasmuch it is correctly

13  categorized as 'outrageous conduct' within the meaning of the law."  Id.

14  III.   Discussion

15  A.  Infliction of Emotional Distress

16  The complaint does not clearly identify its cause of action, but refers throughout to the

17  infliction of emotional distress and to outrageous conduct by the defendants.  Accordingly, the

18  undersigned construes the complaint to allege the state law tort of intentional infliction of

19  emotional distress.[8]  The elements of this claim are (1) extreme and outrageous conduct by the

20  defendant with the intention of causing, or reckless disregard of the probability of causing,

21  emotional distress; (2) the plaintiff suffered severe or extreme emotional distress; and (3) the

22  plaintiff's injuries were actually and proximately caused by the defendant's outrageous conduct.

23

24  [7]  See discussion of plaintiff's motion for leave to amend, below.

25  [8]  California also recognizes a cause of action for the negligent infliction of emotional distress.
    This is not an independent tort, but a theory of recovery for negligence.  Accordingly, it requires

26  the existence of a legal duty of care between the parties.  See Gu v. BMW of N. Am., LLC, 132
    Cal. App. 4th 195, 204-205 (2005) (describing the elements of a claim for negligent infliction of

27  emotional distress).  No such duty exists on the facts alleged here.  The complaint does not
    alleged any acts of negligence, but the deliberate interference with plaintiff's access to his ex-wife

28  and his child.

1   Cochran v. Cochran, 65 Cal. App. 4th 488, 494 (1998) (citation omitted).  In order to meet the

2   first requirement of the tort, the alleged conduct "must be so extreme as to exceed all bounds of

3   that usually tolerated in a civilized community."  Id. (citation omitted).

4        California does not permit a claim for intentional infliction of emotional distress to lie on

5   the basis of one parent's interference with the other's parental rights.  In re Marriage of Segel,

6   179 Cal. App. 3d 602, 607-08 (1986) (allegations that husband maliciously and intentionally

7   prevented wife from seeing child fail to state claim for intentional infliction of emotional

8   distress).  Violations of a parent's right to visitation or custody must be addressed through the

9   appropriate family law court, and a tort action is simply not available as an alternative remedy.

10   Id. at 608.  Accordingly, plaintiff cannot maintain his claim against Canggas as a matter of law.

11        Plaintiff has not cited, and the court's independent research has not identified, any

12   California authority for the proposition that a third party's failure to disclose the location of a

13   spouse or child in the context of a custody dispute can constitute "extreme and outrageous

14   conduct."  As the California Supreme Court has explained, this tort imposes liability only for

15   "conduct exceeding all bounds usually tolerated by a decent society, of a nature which is

16   especially calculated to cause, and does cause, mental distress."  Cole v. Fair Oaks Fire Dept., 43

17   Cal. 3d 148, 155 n. 7 (1987).  Further, behavior "may be considered outrageous if a defendant . . .

18   abuses a relation or position which gives him power to damage the plaintiff's interest."  Id.

19        The allegations before this court do not establish that the defendants abused any

20   position(s) which gave them power over plaintiff's interests.  Neither do the allegations support a

21   conclusion that the defendants' behavior was "especially calculated to cause [plaintiff ] mental

22   distress."  That the defendants knew plaintiff was emotionally distressed about Canggas'

23   behavior, and that their refusal to assist him would upset him further, does not mean that they

24   acted for the purpose of causing distress.  Certainly, the conduct alleged here "did not include

25   threats of physical harm, public harassment or other such conduct which the [California] cases

26   require to be deemed 'extreme and outrageous.'"  Standard Wire & Cable Co. v. Ameritrust

27   Corp., 697 F. Supp. 368, 372 (C.D. Cal. 1988).  Accordingly, the complaint fails to state a claim

28   against any defendant for intentional infliction of emotional distress.

B. <u>Full Faith and Credit</u>

The preclusive effect of a state court judgment in a subsequent federal lawsuit generally is determined by the full faith and credit statute, which provides that state judicial proceedings "shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken."  28 U.S.C. § 1738. Although there is not currently any custody decree entitled to full faith and credit, the Sacramento County Superior Court ordered plaintiff and Canggas to obtain a child custody determination from a court in the Philippines.  ECF No. 1-2 at 5.  This court accordingly must afford full faith and credit to the determination that plaintiff's parental rights are subject to adjudication in the Philippines and only in the Philippines.

In this action plaintiff complains that Canggas has wrongfully kept his child from him, with the cooperation of the other defendants.  ECF No. 1-2 at 4–6.  Although plaintiff is eager to emphasize that he does not seek a custody decree from this court, his claims are all predicated on the assumption that he has legally-enforceable rights to his daughter.  This court cannot accept that premise if it is to give full faith and credit to the order of the Sacramento Superior Court that the custody of Lou Eva be determined by a court in the Philippines.  Nor can it usurp the authority of the Philippine court to compel compliance with its processes.

IV.   <u>Futility of Amendment</u>

Plaintiff appears to concede that he cannot state a claim against defendant Canggas, and accordingly seeks to voluntarily dismiss her as a defendant.  <u>See</u> ECF No. 30 at 1.  Because Canggas has yet to file an answer, plaintiff may dismiss her from this action unilaterally by notice.  <u>See</u> Fed. R. Civ. P. 41(a); <u>Pedrina v. Chun</u>, 987 F.2d 608, 609 (9th Cir. 1993).  However, dismissing defendant Canggas from the action does not cure plaintiff's complaint.

According to plaintiff, dropping Canggas solves the full faith and credit problem because she is the only defendant who was a party to the state court family law matter.  ECF No. 30 at 2. He argues that the state court judgment bars claims against her only, while his claims against the remaining defendants may proceed.  <u>Id.</u>  Even if this theory had merit as to the full faith and credit issue, however, it would not overcome the complaint's failure to state a claim against the

1    defendants other than Canggas.

2         Plaintiff has separately filed a motion for leave to file an amended complaint.  ECF No.

3    31.  The proposed First Amended Complaint ("FAC"), ECF No. 31-1, does not comply with Rule

4    8(a) of the Federal Rules of Civil Procedure (requiring a jurisdictional statement, a short and plain

5    statement of the claim, and a demand for relief) or with Local Rule 220.  The putative FAC

6    consists of four paragraphs: the first purporting to incorporate the allegations of the initial

7    complaint, the second dismissing defendant Canggas (although she is the only defendant

8    identified in the caption), the third asserting plaintiff's "right to establish and maintain a parent-

9    child relationship with his biological daughter," and the fourth recalculating his damages.[9]  ECF

10   No. 31-1.

11        An amended pleading must stand on its own; a plaintiff cannot incorporate previous

12   pleadings or other filings into an amended complaint by reference.  Local Rule 220; see also Loux

13   v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  Because the proposed FAC is facially defective, the

14   motion for leave to file it must be denied.

15        That leaves the question whether plaintiff should be provided an opportunity to try again.

16   The Federal Rules provide that leave to amend pleadings "shall be freely given when justice so

17   requires."  Fed.R.Civ.P. 15(a).  "[T]his policy is to be applied with extreme liberality."  Morongo

18   Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir.1990) (citing DCD Programs,

19   Ltd. v. Leighton, 833 F.2d 183, 186 (9th Cir.1987)).  Where a complaint is dismissed pursuant to

20   Rule 12(b)(6), "[the] district court should grant leave to amend even if no request to amend the

21   pleading was made, unless it determines that the pleading could not possibly be cured by the

22   allegation of other facts."  Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc).

23   However, the futility of amendment can by itself justify denial of leave to amend.  Gompper v.

24   VISX, Inc., 298 F.3d 893, 898 (9th Cir. 2002).

25        Amendment in this case would be futile.  For the reasons previously explained, the claim

26   against defendant Canggas is foreclosed as a matter of law.  The allegations against the other

27

28   [9]  Plaintiff seeks compensatory damages in a total amount of $2,211,209.48 and punitive damages
     in excess of $10,000,000.00.

1  defendants fall far below the "outrageous conduct" standard for intentional infliction of emotional

2  distress.  Given the nature of the dispute, the claim cannot possibly be cured by the allegation of

3  other facts.  And even if it were theoretically possible for plaintiff to allege additional facts, the

4  circumstances warranting abstention would apply equally to an amended complaint.  For all these

5  reasons, leave to amend is not appropriate.

6                                               CONCLUSION

7          The principles governing abstention in domestic relations cases, the full faith and credit

8  doctrine, and California tort law all point to the same conclusion: plaintiff's remedy for the

9  alleged denial of access to his daughter, and for his ex-wife's evasion of process in the family law

10  matter, lies in the domestic relations courts of the Philippines.  Plaintiff has stated, and can state,

11  no cause of action against the other defendants.

12          In accordance with the foregoing, THE COURT HEREBY RECOMMENDS that:

13          1.       Plaintiff's complaint, ECF No. 1, be DISMISSED without leave to amend;

14          2.       Plaintiff's motion for leave to amend, ECF No. 31, be DENIED; and

15          3.       Plaintiff's February 2015 Service and Discovery Motions, ECF Nos. 18–21, be

16                   DENIED as moot.

17          These findings and recommendations are submitted to the United States District Judge

18  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days

19  after being served with these findings and recommendations, any party may file written

20  objections with the court and serve a copy on all parties.  Such a document should be captioned

21  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

22  objections shall be filed and served within fourteen days after service of the objections.  The

23  parties are advised that failure to file objections within the specified time may waive the right to

24  appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

25  DATED:  April 20, 2015

26                                               _____

27                                               ALLISON CLAIRE
                                                 UNITED STATES MAGISTRATE JUDGE

28

                                                     12